## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TONNETTE JONES,

Plaintiff,

v.

CIRCUIT COURT OF COOK
COUNTY, OFFICE OF THE CHIEF
JUDGE, AVIK DAS, and EILEEN
KINTZLER,

Defendants.

Case No. 18-cv-01319

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Tonnette Jones was formerly employed by the Cook County Circuit Court's Juvenile Probation and Court Services Department as a Juvenile Probation Officer. After she was terminated in March 2018, Jones brought this employment discrimination action against the Circuit Court's Office of the Chief Judge, Avik Das, the Acting Director of the Circuit Court's Juvenile Probation Department, and Eileen Kintzler, the Supervising Probation Officer of the Circuit Court's Juvenile Probation Department. Defendants move for summary judgment on the remaining claims in Jones's third amended complaint. [184]. For the reasons explained below, this Court grants Defendants' motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

1

A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

# BACKGROUND[1]

The Court initially addresses Defendants' argument that Jones failed to comply with Local Rule 56.1. The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). A district court can strictly enforce this local rule "by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). The Court agrees that Jones failed to fully comply with the Local Rule. For example, in a number of responses, Jones responded that Defendants' asserted fact was "contested" but did not specify which portion was disputed or not disputed as required by Local Rule 56.1(e)(2). The Court will address particular responses as they are relevant below.

Next, in response to Defendants' summary judgment motion, Jones relies on the January 2023 declaration of Jason Smith [200-2]. Defendants request that the Court disregard this declaration since Jones did not identify Smith as an individual with knowledge of information relevant to her claims. Rule 26 requires a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information ... that the disclosing party may use to support its claims or defenses." Fed. R. Civ. Pro. 26(a)(1)(A)(i). "[A] motion for summary judgment supported by an affidavit from a witness not previously disclosed in the

---

[1] The Court takes these background facts from Defendants' Rule 56.1 statement of facts (DSOF) [188] and Jones's response to Defendants' statement of facts and Jones's additional facts (PSOF) [201].

case ordinarily will cause problems" and the court must address "problems the tactic creates for opposing parties so as to prevent surprise and unfair prejudice." *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 768 (7th Cir. 2020). Jones does not assert that Smith was disclosed as a witness in this case. In addition, Smith's declaration is dated January 15, 2023, one day before Jones filed her summary judgment response. The Court finds that Smith was not properly disclosed. To avoid surprise and unfair prejudice to Defendants, the Court will disregard Smith's declaration. To the extent Jones relies on it as evidence to support asserted facts, the Court will not consider those facts properly supported.

With this, the Court turns to the undisputed facts.

## I.     Plaintiff's Employment

Jones, who is African American, began her employment with the Office of the Chief Judge ("OCJ") as a Juvenile Probation Officer within the Juvenile Probation Department ("JPD") in February 2015 until her termination, effective March 19, 2018. DSOF ¶ 1.[2] Defendant Eileen Kintzler ("Kintzler"), who is white, was Jones's Supervising Probation Officer ("SPO") in 2017; she is sued only in her individual capacity. *Id*. ¶ 2. Defendant Avik Das ("Das") was the Acting Director of the JPD in 2017 and 2018; he is also sued only in his individual capacity. *Id*. ¶ 3. The OCJ is the administrative arm of Chief Judge Timothy Evans of the Circuit Court of Cook County, Illinois. *Id*. ¶ 4.

---

[2] Jones says this fact is "contested" but clarifies only the name of the department, Circuit Court of Cook County's Juvenile Probation and Court Services Department. [201 ¶ 1].

In December 2017, Jones and the other Juvenile Probation Officers in her unit reported to SPO Kintzler and were assigned a case load of clients—juvenile probationers. *Id.* ¶ 6. From approximately 2015 until December 2017, Jones's Deputy Chief Probation Officer ("DCPO") was Karen Kelly, who is African American. *Id.* ¶ 7. As a Juvenile Probation Officer, Jones's job duties included conducting social investigations, obtaining records, providing the social investigations to the court, and acting in the "best interest of the child." *Id.* ¶ 8. Juvenile Probation Officers receive training on how to conduct and write up social investigations, which are detailed reports and the "defining product of a probation officer in being the eyes and ears of the Court". *Id.* ¶ 9. Juvenile Probation Officers were required to "conduct themselves in accordance with the Rules of Professional Conduct and/or Code of Conduct referenced in the Employer's policy and procedure manual, which are established to promote the integrity of the probation department and the judiciary." *Id.* ¶ 13; PSOF 3. Jones was bound by the policies and procedures of JPD and took an Oath of Office to "faithfully discharge the duties of [a] Juvenile Probation Officer." DSOF ¶ 13.

Before reporting to SPO Kintzler, Jones's SPO was Ron Dussman; Jones testified that that SPO Dussman criticized her performance. *Id.* ¶ 12. After a series of events in 2017, Kintzler sent a memorandum to DCPO Kelly informing Kelly that she had "grave concerns with PO Jones attitude and behavior towards those who are here to teach, guide, and supervise her" and that there was a "pattern of behavior that [she has] observed from PO Jones [that] reflects a lack of regard or respect for authority or the rules within the [JPD]." *Id.* ¶ 32. Following an Investigatory Meeting, Kelly

5

issued a verbal reprimand to Jones on December 4, 2017. *Id*. ¶ 33. In addition in December 2017, Kintzler made requests to Jones to revise a Social Investigation report but Jones did not do so. *Id*. ¶¶ 55, 59.

Following her conversation with SPO Kintzler, on December 14, 2017, Jones went to the Sheriff's Department to complain of discrimination and harassment and to file a complaint about Officer Kintzler. *Id*. ¶ 52.[3] The same day, after Jones's shift had ended, she contacted the Chicago Police Department to complain about "discrimination and retaliation" and "harassment". *Id*. ¶ 57. On December 18, 2017, Donna Neal, Deputy Chief Probation Officer in Human Resources, told Jones that, per Das' direction, Jones was being placed on Temporary Suspension because she "caused disruption to the operations of the department". *Id*. ¶ 66.

## II.     OCJ Investigation

Following Jones's complaint about discrimination and harassment in December 2017, OCJ conducted an investigation. *Id*. ¶ 67. Twelve people were interviewed and three interview summaries were reviewed. *Id*. Jones was alerted to the investigation on December 21, 2017. *Id*. Patterson and Das were informed that the allegations of discrimination and harassment could not be substantiated. *Id*. ¶ 68. Jones was told

---

[3] Jones says this fact is "contested" though she does not dispute she went to the Sheriff's Department to complain on December 14, 2017, but adds additional detail to the content of her complaints. [201 ¶ 52].

that "[a]ll of the other officers in your unit confirmed that SPO Kintzler offers similar feedback and commentary on their Social Investigations and other work." *Id*.

### III.  Plaintiff's Termination

Avik Das made the decision to terminate Jones. *Id*. ¶ 70. He testified that he made the decision because of her performance issues and her conduct that "undermin[ed] [] the governance structure of the organization, [] our integrity in front of our court or in our relationships to our clients." *Id*.[4] On March 16, 2018, Jones was advised of her termination, effective March 19, 2018. *Id*. ¶ 71. Das stated that he issued this discipline "for just cause" and gave the reasons for the termination. *Id*. Das testified that the reasons listed in the disciplinary decision were the sole reasons that Jones was terminated. PSOF ¶ 39.

### IV.  Plaintiff's Grievance and EEOC Charges

On November 21, 2017, Jones filed a charge with the Equal Employment Opportunity Commission (EEOC) for discrimination and retaliation. *Id*. ¶ 75. Jones filed another EEOC charge on December 19, 2017. *Id*. ¶ 76. In addition, Jones grieved her termination against the Department and the matter proceeded to arbitration.

---

[4] Jones does not contest that this was Das's testimony but responds that it "omits Das's testimony where he acknowledges that the reasons listed in the disciplinary decision were the sole reasons that Jones was terminated." [201 ¶ 70, citing Das Dep. [191-1], p. 50]. The Court does not find this to present a material issue of fact in dispute.

DSOF ¶ 74. In October 2019, the arbitrator issued an opinion and denied her grievance, finding no violation of the Collective Bargaining Agreement (CBA). *Id*.[5]

## ANALYSIS

In this case Jones's remaining claims are for: violation of the Illinois State Officials and Employees Ethics Act ("Ethics Act") (Count III), violation of the Illinois Whistleblower Act ("IWA") (Count IV), and hostile work environment under Title VII of the Civil Rights Act of 1964 (Count V).[6] [128]. Defendants move for summary judgment on all of these claims. For the following reasons, this Court finds that Jones has not raised a genuine issue of material fact on her Title VII claim and summary judgment in favor of Defendants is warranted.

### I.    Hostile Work Environment

Title VII protects employees from hostile work environments that are "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Abrego v. Wilkie,* 907 F.3d 1004, 1015 (7th Cir. 2018) (citations omitted). In Count V, brought against the OCJ, Jones claims that she was

---

[5] Jones responds that this fact is "contested" because it is an "incomplete description of the arbitrator's opinion." [201 ¶ 74]. The Court agrees that DSOF ¶ 74 is not a full summary of the arbitrator's opinion. But again does not find that this presents a material issue of factual dispute. Jones does not dispute that the arbitrator denied her grievance, finding that the Department had just cause in issuing its discipline and finding no violation of the CBA. *See* [189-60, "Arbitrator Opinion"].

[6] This Court previously dismissed the other counts in the complaint for retaliation under the First Amendment and § 1983 conspiracy. [150].

subjected to a hostile work environment. She alleges that she experienced repeated unwelcome harassment based on her race by Defendants.

Defendants first argue Jones failed to exhaust remedies related to her termination, which occurred after she filed her EEOC Charge. Jones responds that her Title VII claim is not based on her termination, but rather the hostile work environment she experienced during her employment. [200 at 5]. Defendants do not dispute that her hostile work environment claim was exhausted. Indeed, this Court already ruled that it was. *See* [150 at 10]. Thus the Court will not dismiss on that basis. Jones also requests that her termination be considered as part of her hostile work environment claim. [200 at 5, citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and *Turner v. The Saloon*, Ltd., 595 F.3d 679, 685 (7th Cir. 2010)]. Defendants do not respond to this argument. *See* [204]. The Court will therefore consider Jones's termination in assessing totality of the circumstances related to her Title VII claim.

To prove her hostile work environment claim, Jones must show: (1) unwelcome harassment; (2) based upon her race; (3) that was "so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment"; and (4) a basis for employer liability. *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021); *see also Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 714 (7th Cir. 2021).

A work environment "is hostile under Title VII when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1115 (7th Cir. 2022) (cleaned up). Whether harassment meets this "severe or pervasive" bar, a court assesses the totality of the circumstances. *Id.* at 1116. The determination depends on the "severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018) (quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009)).

Jones argues that the evidence of a hostile work environment is: (1) the "no children-in-the-workplace" policy that was targeted at her and was not race-neutral; (2) Das's discipline of Jones for the juvenile client letters; (3) Jones being falsely accused of being unprofessional by Kintzler; (4) Jones being falsely accused of telling a juvenile client that Kintzler was a racist; (5) Jones' non-black counterparts being treated more favorably than her in the disciplinary processes; (6) Kintzler's treatment of Black probation officers compared to their non-black counterparts; (7) Das's racist comment at a meeting; and (8) her termination. [200 at 6-9].

The standard for assessing a hostile work environment claim is disjunctive meaning that "one extremely serious act of harassment could rise to an actionable level, as could a series of less severe acts." *Saxton v. Wolf*, 508 F. Supp. 3d 299, 310 (N.D. Ill. 2020) (cleaned up). Jones proceeds under the latter theory. She argues that the "pervasive and severe harassment directed at [her], the preferential treatment of

her non-black colleagues, and the openly racist comment of Das combine to establish a pattern of racial animus." [200 at 9]. Viewing the evidence as a whole, however, the circumstances did not rise to the level of altering the conditions of employment and creating an abusive working environment for Jones.

Jones argues that the no-children-in-the-workplace policy was targeted at her and was based on her race. Defendants counter with evidence of a 1996 OCJ memorandum stating that, "to preserve the confidentiality of all proceedings under the Juvenile Court Act, we must ask that you not bring your children to work with you." [187-14]. Das further testified that OCJ has an office policy against employees' children in the workplace and the policy was enforced. (Das Dep., pp. 69, 70). For her part, Jones cites Das's testimony where he did not recall whether the policy was in the policy manual but knew it was a human resources communication, and he could not recall a specific meeting where he orally communicated the expectation. *Id.* at pp. 108, 110; [201 ¶ 17]. But this does not undermine Das's testimony that there was such a policy and it was enforced. Jones asserts she was "the only individual known to have been disciplined under this new policy" [200 at 6]. But, importantly, she does not explain how being directed not to have her children in the office constituted threatening or humiliating conduct by defendants, *Johnson*, 892 F.3d at 900, or interfered with her work performance. *Scruggs*, 587 F.3d at 840 (considering whether

defendant's conduct "unreasonably interferes with an employee's work performance.").

Next Jones argues that Das chose only to discipline Jones and not white employees regarding the handling of certain juvenile client letters. Jones's Rule 56.1 fact that she relies on states that "[n]o other probation officer[] was disciplined for allegedly misrepresenting their authority." PSOF ¶ 26. It does not state that white employees were not disciplined.[7] Thus Jones does not show how this allegedly harassing discipline was based on her race. And she does not explain how being disciplined created a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Chen v. Yellen*, No. 21-3110, 2023 WL 2967428, at *2 (7th Cir. Apr. 17, 2023) (cleaned up), reh'g denied, No. 21-3110, 2023 WL 3827944 (7th Cir. June 5, 2023). Moreover, for support Jones relies on *Morris v. BNSF Ry. Co.*, 969 F.3d 753 (7th Cir. 2020) but that was not a hostile work environment case.

Jones also contends that she was falsely accused of being unprofessional and of telling a juvenile client that Kintzler was a racist. Generally "offhand comments, and isolated incidents (unless extremely serious) are not sufficient" for a hostile work environment claim. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004). Jones also claims that Kintzler treated African American probation officers "in an irritated and frustrated manner" by berating and yelling at them, while non-black probation officers were not treated this way. [200 at 8; PSOF ¶ 37]. But the Seventh Circuit has found that courts properly grant summary judgment even where

---

[7] PSOF ¶ 26 also relies on the Jason Smith declaration, which, as discussed, this Court is disregarding.

supervisors were "short tempered," "hostile," unfairly critical, disrespectful, and subject a plaintiff to "excessive monitoring". *Abrego*, 907 F.3d at 1015. Again Jones has not shown that her environment was "so pervaded by discrimination that the terms and conditions of employment [were] altered." *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (cleaned up).

Jones further asserts that her non-black counterparts were treated more favorably than her in the disciplinary processes.[8] In her Rule 56.1 statement she asserts that her "[w]hite counterparts have received lesser discipline for worse infractions." PSOF ¶ 36. As to Susan Patla, Jones says she was suspended for an incorrect submission of a custodial sheet, and that she had been "suspended in years prior for repeated drug abuse at work." Jones relies on her own declaration for this statement. But the reference to suspension for drug abuse is not in Jones's declaration, so it is unsupported by evidence. (Jones Decl. ¶ 17). Additionally, as Defendants point out, Jones does not explain in her declaration how she has personal knowledge of any discipline of employees Patla and Grunauer. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). And the

---

[8] The Court notes, as Defendants point out, that several of Jones's arguments sound in disparate treatment, but Jones's only federal claim is for hostile work environment.

assertions about Modjeski and Chio rely solely on Smith's declaration, which, for the reasons discussed, the Court is disregarding.

Jones also says her termination shows she was disciplined more harshly than her white counterparts. However "[a]n employee's own opinions about [her] ... qualifications [do not] give rise to a material factual dispute." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 381 (7th Cir. 2020). And Jones has not put forth evidence that her termination in 2018 was based on her race. To the contrary, Jones concedes that Das's letter explaining her termination identifies all of the reasons (all performance-related) that she was terminated. [201 ¶ 70].

Finally, Jones states that in 2016, Das used the N–Word during a meeting before the African American Coalition of Probation Officers. PSOF ¶ 34. Defendants dispute this statement and argue it is not supported by admissible evidence. [206 ¶ 34]. Even assuming it is supported by admissible evidence, it does not show Jones was subjected to a hostile work environment. Jones testified that she was not at the meeting when Das used the slur, that she was not part of the coalition, and that she did not hear Das refer to anyone by a racial slur. (Jones Dep. [189-2] p. 168). It is true that "racial epithets do not always have to be stated directly to a plaintiff to create an objectively hostile work environment," but "remarks that are stated directly to the plaintiff weigh heavier than when a plaintiff hears them secondhand." *Scaife,* 49 F.4th at 1116. In *Scaife*, similar to here, plaintiff did not show a hostile work environment in part because plaintiff heard about the slur from a co-worker and after it was uttered. Jones relies on *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631 (7th Cir.

2019). But *Gates* is different because there plaintiff's direct supervisor addressed him "with the N-word twice, and once threatened to write up his 'black ass.'" *Id.* at 632.

In their opening motion Defendants argued that "[n]o reasonable jury could find the complained of conduct subjectively and objectively 'altered the conditions' of Plaintiff's employment." [185 at 8]. Jones did not respond to this argument or otherwise explain how the conditions of her employment were altered. *Alamo*, 864 F.3d at 550. *See Castelino v. Rose-Hulman Inst. of Tech.,* 999 F.3d 1031, 1040 (7th Cir. 2021) ("In considering a motion for summary judgment, the court is not obligated to assume the truth of a nonmovant's conclusory allegations on faith or to scour the record to unearth material factual disputes.") (cleaned up); *Rozumalski v. W.F. Baird & Assocs., Ltd.,* 937 F.3d 919, 925 (7th Cir. 2019) (party opposing a summary judgment motion must inform the court "of the reasons, legal or factual, why summary judgment should not be entered").

In sum, the totality of the circumstances fall short of showing Jones endured a hostile work environment. A reasonable factfinder could not return a verdict in Jones's favor on this claim.

## II.   Ethics Act and Whistleblower Act Claims

The Court next turns to Jones's claims that Defendants unlawfully retaliated against her in violation of the Illinois Ethics Act and Illinois Whistleblower Act (IWA). As alleged in Jones's complaint, the Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a). [128]. However, the Court is entering judgment against Jones on the sole remaining federal claim, the Title VII

claim. Generally, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). The Seventh Circuit has explained that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). *See also* 28 U.S.C. § 1367(c)(3).

The Court sees no reason that this presumption does not apply here. *See Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam). The federal claim having been resolved, the remaining claims involve issues of state law, including the individual defendants' status under the IWA and whether the Ethics Act claim is preempted under the Illinois Human Rights Act.[9] *See Hansen v. Bd. of Tr. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3). Therefore the Court relinquishes jurisdiction over any remaining state law claims.

## CONCLUSION

For the reasons explained, this Court grants Defendants' motion for summary judgment [184].

---

[9] Additionally under Illinois's savings statute, Jones would not be precluded from filing her state law claims in state court, 735 ILCS 5/13-217 (plaintiff has one year following dismissal to file claims in state court); *see also Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 695 (N.D. Ill. 2012).

Judgment shall enter in favor of Defendants. Civil case terminated.

E N T E R:

Dated: August 7, 2023

_____
MARY M. ROWLAND
United States District Judge